RALPH GOMAN, d/b/a Acme Transfer Company, appellee, v. MARY BENEDIK, appellant.

No. 50582.

720

MARCH 6, 1962

Clyde Putnam, Jr., of Putnam & Putnam, of Des Moines, and Walter J. Willett, of Tama, for appellant.

Ben Morris of Hyland & Hyland, of Tama, and George G. Fagg and Harry Druker of Boardman, Cartwright & Druker, all of Marshalltown, for appellee.

LARSON, J.—The question presented by this appeal is whether the trial court erred in refusing to rule as a matter of law plaintiff was contributorily negligent, and therefore could not recover in an action for damages to his truck-tractor as a result of a collision with the rear end of defendant's automobile on a primary highway bridge. We hold with the trial court that under the record the issue of freedom from contributory negligence was one of fact for the jury and affirm the judgment for plaintiff.

Certain basic propositions needing no citation of authority applicable to this matter perhaps should be mentioned. It is not disputed by appellant, that we must view the evidence in the light most favorable to plaintiff; that it is only the exceptional case in which the issue of freedom from contributory negligence should not be submitted to the jury—only where such negligence is so palpable, flagrant and manifest that reasonable minds may fairly reach no other conclusion; that if there is any evidence tending to establish plaintiff's freedom from contributory negligence, the question is one of fact for the jury and doubts should be resolved in favor of such submission. Bannister v. Dale, 252 Iowa 1031, 109 N.W.2d 626, and citations; Auen v. Kluver, 250 Iowa 619, 95 N.W.2d 273. Other propositions, well established, applicable here are, that a driver with the right of way has the right to assume until he knows or should know otherwise, that other drivers will comply with the statutes controlling access to the highway, and that control of one's vehicle as required by section 321.288, of the Code, does not necessarily mean ability to stop instanter, but means an automobile is under control, if at the rate it is moving the driver has the mechanism and power under such control that he can bring it to a stop with a reasonable degree of celerity. This of course depends greatly upon the existing circumstances. Dorman v. Service Sales Co., 241 Iowa 1182, 44 N.W.2d 716, and authorities cited.

In view of appellant's contention that plaintiff by his own testimony disclosed a failure to have his vehicle under control, a failure to operate his vehicle in such a manner that it could be brought to a stop within the assured clear distance ahead, and that he did not bring his vehicle to a stop with a reasonable degree of celerity, a rather detailed review of the record seems necessary.

William Bowman, age twenty, whom we shall for convenience refer to as plaintiff, an experienced and licensed driver for the Acme Transfer Company, at about 5 p.m., on August 24, 1956, was operating the company's 1956 G.M.C. tractor and trailer loaded with 3100 pounds of boxed meat, eastward on Highway 30 some fourteen miles east of Tama, Iowa, when it collided with the rear of a Plymouth automobile driven by the defendant, Mary Benedik, then 61 years of age. When the gasoline tank on the automobile ruptured fire resulted, seriously damaging the tractor, and destroying the car. No one was injured in the mishap.

The collision occurred in the eastbound lane approximately one third the distance across a 375.1-foot two-lane bridge, and the vehicles came to rest against the north cement guardrail in the westbound lane, approximately 275 feet from the west end of the bridge. The 24-foot-wide cement pavement from a county road intersection some 810.7 feet west of the bridge, over Salt Creek, was dry, clear and level, but east of the bridge there was a small depression followed by a slight rise over a railroad right of way. West of the county road intersection the highway runs uphill approximately 2000 feet, to a crest, and then continues to climb for about a mile.

Plaintiff testified that as he came down the hill from the west he used his brakes to hold his rig within the legal speed limit, and that as he approached the intersection he saw a Plymouth automobile headed east, parked on the south shoulder of the highway approximately 20 feet from the bridge. His 45-foot tractor and trailer weighing a total of 53,000 pounds was then traveling 45 or 50 miles per hour. As he passed the intersection he noticed defendant and another woman get into the Plymouth car. Although he sounded his horn, without any signal or warning from her, the defendant started her car, pulled from the

shoulder onto the pavement in the path of his tractor and trailer, and headed eastward. There is some variation in the testimony as to just how far behind her plaintiff was when she pulled into his path, but whether it was 100 feet or 125 feet it was so close he said a stop could not be made in that distance, and the court gave the jury an emergency instruction. No error is predicated thereon in this appeal and under the circumstances we think it was proper, if not required.

As plaintiff approached the bridge he reduced his speed to about 40 miles per hour, "maybe thirty-five", and had taken note of an automobile approaching from the east in the westbound lane. Although he swung his rig to the left partially into the westbound lane to avoid an immediate collision with defendant's car, he was promptly forced back into the east lane by the fast moving westbound vehicle. While executing this maneuver which he said was to gain some time for defendant to accelerate her automobile and give him room to slow down or stop, he applied both foot and hand air brakes, and the emergency brake. He also sounded his horn to alert her to the danger.

Plaintiff estimated defendant's speed at 10 miles per hour, and said when he pulled back into the south lane she was only one or two car lengths ahead of him. She did not gain speed and although he had reduced his speed to 20 or 25 miles per hour, he overtook her at a point 125 or 135 feet from the west end of the bridge. The collision occurred just as the westbound car passed. When they stopped the front of the Plymouth was about 135 feet from the point of impact, the tractor locked behind it, and the trailer was jackknifed across both lanes of traffic.

Plaintiff testified his brakes were of the latest and best design, and had been recently inspected and tested and were in excellent condition. He said they functioned properly as they were applied on this occasion, although the only skid marks visible were from "just before the impact and up to where we stopped."

Defendant contends the distance it took plaintiff to stop his tractor-trailer outfit after defendant entered his path was so excessive that it conclusively proved his lack of due care.

I. It is of course plaintiff's burden to plead and prove freedom from contributory negligence, or any negligence which

contributed to his injury. His failure to do so will bar his recovery. Hutchinson v. Minneapolis & St. L. Ry. Co., 252 Iowa 228, 232, 106 N.W.2d 419, 421, and citations. However it is only in the exceptional case that this question of fact is for the court. Paulsen v. Mitchell, 252 Iowa 65, 68, 105 N.W.2d 603, 605, and citations.

■ It is the general rule also that a motorist has a right, though hazardous sometimes, to assume until he knows, or in the exercise of due care should know otherwise, that other motorists will obey the rules of the road, and will operate their vehicles with ordinary care under the circumstances. Dorman v. Service Sales Co. supra, 241 Iowa 1182, 1184, 44 N.W.2d 716, and citations.

II. Did plaintiff here fail to generate a jury question on either issue? Apparently we have previously considered no case in which like circumstances have appeared. However, we have often said each case of this type must depend greatly upon the circumstances revealed by the record. Sisson v. Weathermon, 252 Iowa 786, 108 N.W.2d 585.

■ As previously indicated, we think plaintiff's showing that defendant entered the highway in his path was sufficient to sustain a finding that he faced an emergency not of his own making. Clearly the resulting situation not only endangered these parties but those in the westbound vehicle as well.

That plaintiff's assured clear distance before her entrance onto the highway was unlimited, his speed was reasonable and proper and he had slowed for the bridge are amply sustained by the evidence.

Due to defendant's violation of section 321.313, Code, 1958, (she pleaded guilty to the charge) it may fairly be said plaintiff was caught in a trap, not of his own making, involving defendant's car, a bridge and an oncoming vehicle in the westbound lane. The consequence might easily have been more disastrous.

■ We have often said when one is confronted by just such an emergency and thereafter exercises ordinary care in an attempt to avoid a collision, he may not be found guilty of negligence as a matter of law when a collision results. Sisson v. Weathermon, supra, 252 Iowa 786, 793, 108 N.W.2d 585, 588;

Central States Electric Co. v. McVay, 232 Iowa 469, 5 N.W.2d 817, 819. We have even held a motorist is not ordinarily charged with negligence where he is faced with an emergency not of his own making, has only two or three seconds to make a decision. Menke v. Peterschmidt, 246 Iowa 722, 733, 69 N.W.2d 65, 73, and citations. Murray v. Lang, 252 Iowa 260, 264, 106 N.W.2d 643, 645, and citations.

Clearly this is not the case where a driver in broad daylight, on a smooth, level pavement runs into and strikes the rear of another vehicle rightfully traveling on his own side of the highway in a normal manner, Albrecht v. Waterloo Construction Co., 218 Iowa 1205, 257 N.W. 183, nor the case where an inference that the truck driver was negligent in failing to keep a proper lookout and in failing to bring his vehicle to a stop within the assured clear distance ahead was not rebutted. Harvey v. Borg, 218 Iowa 1228, 257 N.W. 190. It is not the situation where the emergency is of the party's own making found in Howie v. Ryder & McGloughlin, 244 Iowa 861, 58 N.W.2d 389, and Barrick v. Smith, 248 Iowa 195, 80 N.W.2d 326, cited by defendant. In that regard a change in the provisions of section 321.285 by chapter 49, Acts of the Forty-sixth General Assembly, was considered by us in Sisson v. Weathermon, supra. To the law requiring one to drive at no greater speed than will permit him to bring his vehicle "to a stop within the assured clear distance ahead", the amendment added that he has "the right to assume, however, that all persons using said highway will observe the law."

While we have serious doubts plaintiff could under these conditions be held contributorily negligent when he struck defendant's vehicle, we shall consider defendant's further contention that what plaintiff did thereafter constituted a failure to exercise due care under the circumstances.

■■ III. Defendant contends under his own testimony and the physical facts disclosed by the record, plaintiff was negligent in failing to have his truck-tractor under control, and in failing to stop in the assured clear distance ahead. We find no merit in either contention. The question of control largely depends upon the circumstances of each case and is ordinarily a

question for the jury. It involves the ability to guide and direct the course of movement of the vehicle, command of the speed and power of the outfit, and the ability to bring it to a halt with a reasonable degree of celerity under the existing circumstances. Long v. Gilchrist, 251 Iowa 1294, 1298, 105 N.W.2d 82, and citations. We have carefully examined the record and are satisfied it is sufficient to sustain a finding that plaintiff exercised proper control of his tractor-trailer, when he veered to the left, applied his brakes, sounded his horn and then swung back into his own lane in order to avoid a collision with the westbound car. Nothing in the record would even raise an inference he was not alert, or did not act promptly in an effort to avoid a collision with other vehicles then in the vicinity.

Certainly with the possible exception of the time and distance it took him to halt his outfit after the emergency arose, it is difficult to find in his maneuver any basis of neglect. The only inference, if it is an inference, remains that due to the distance he covered before the collision, and the further distance both vehicles traveled afterwards and before coming to a halt, plaintiff did not properly control his vehicle. While it is true after his maneuvering, the collision occurred 240 to 275 feet from his position when the emergency arose and the place he came to rest some 125 to 135 feet beyond that, yet under the circumstances we must find it was not so excessive that reasonable minds would not differ on the issue of proper control. Reasonableness of time lags to transfer observations into action and in directional changes were properly considered by the fact finders. Seeds v. Chicago Transit Authority, 342 Ill. App., 303, 96 N.E.2d 646 ; Smith & Hurds Traffic Engineering Handbook, page 20. It cannot be doubted his evidence of proper control was quite sufficient to support a finding of such fact in his favor.

IV. Furthermore under this record the evidence is far from conclusive that plaintiff violated section 321.285, Code, 1958. Nowhere does it appear that plaintiff was driving his vehicle upon the highway at a speed greater than would permit him to bring it to a stop within the assured clear distance ahead, especially when we consider that he had the right under that statute to assume that all persons using said highway would observe the law and not enter his lane without warning.

As we understand it defendant argues that since the collision did not occur at the place she entered the traveled portion of the highway, but some 155 feet east thereof, or 240 to 275 feet from the place the peril became apparent to plaintiff, a failure to reduce the speed below 20 or 25 miles per hour constituted conclusive proof he was driving his rig at a speed beyond that permitted by the statute. She argues the speed reduction of only 20 miles per hour indicates not only a lack of control but a violation of the speed statutes. The issue was for the jury, for clearly due to defendant's violation of the law creating an unexpected situation the normal stopping requirement for plaintiff would be inapplicable. Prior to that time plaintiff was not exceeding the posted speed limit. While he may or may not have been able to slow his outfit to less than 20 miles per hour in 240 to 275 feet, or bring it to a halt within 400 feet of the spot of brake application under normal conditions, and while it may have been a violation not to do so, under normal conditions, we cannot say under the conditions here disclosed he was negligent as a matter of law in not doing so. Under cross-examination plaintiff gave his opinion that under the conditions then existing it would require some 400 feet to bring his heavily loaded truck to a halt, and certainly we cannot take judicial notice to the contrary. Muse v. Page, 125 Conn. 219, 4 A.2d 329; Willrodt v. Union City Transfer, Tex. Civ. App., 258 S.W.2d 443.

While charts and tests made under specified and normal conditions are available and beneficial in some cases, under the circumstances facing this driver they are of little help in establishing a firm or required stopping distance under the law. See "Traffic Safety Memo. 22", National Safety Council; and "Charts and Tables for Stopping Distances of Motor Vehicles", Northwestern University, 1960.

V. We conclude the trial court was correct in submitting the contributory negligence issue to the jury, that this is not the exceptional case in which reasonable minds could fairly reach no other conclusion than that the plaintiff was guilty of negligence contributing to his damage, and that there was ample evidence to sustain the jury verdict herein. Thus there was no error in overruling defendant's motion for a directed verdict,

her motion for a new trial, and for judgment notwithstanding the verdict. The judgment is therefore affirmed.—Affirmed.

All JUSTICES concur except BLISS, J., not sitting.