JERRY L. WILCOX, by his next friend, M. J. WILCOX, appellant, v. DONALD HILLIGAS and CHARLES HILLIGAS, appellees.

No. 50634.

(Reported in 117 N.W.2d 42)

SEPTEMBER 18, 1962.

Orville W. Bloethe, of Victor, and Bray, McCoy & Faulkner, of Oskaloosa, for appellant.

Tomasek & Vogel, of Grinnell, for appellees.

THORNTON, J.—A verdict has been directed against plaintiff, a rear seat guest in defendant's automobile, because of insufficiency of plaintiff's evidence to make a jury question on reckless operation by defendant driver. Hence this appeal.

Plaintiff is entitled to have the evidence viewed in the light most favorable to him. And if, so viewed, there is substantial evidence from which a jury might reasonably draw an inference of reckless operation, he is entitled to have his case submitted to a jury.

The jury could properly find: On December 11, 1960, defendant Donald Hilligas was driving his father's car (defendant Charles Hilligas), and Dorothy McDonald, Donna Jean

Collins and plaintiff, Jerry Wilcox, were riding with him as his guests. The four were high school students. They had attended a show early in the evening and were returning home on a gravel road between 10 and 11 p.m. that evening. Defendant was driving from 35 to 45 miles per hour in an easterly direction. The gravel portion of the road was 24 feet wide with some loose gravel two feet from the south edge of the gravel. There was no snow, ice or wet surface on the road, and no other traffic. Defendant and Dorothy McDonald were seated in front, he behind the wheel and Dorothy close beside him so that her left shoulder was in front of him (a third of her back at the shoulder level) and between him and the steering wheel. He was driving with his left hand on the wheel and his right arm around Dorothy. Plaintiff and Donna were sitting on the right-hand side of the back seat. There were three tracks on the gravel road, defendant was driving with his left wheel in the center track and his right wheel in the south or right-hand track. At a point 135 feet (measured along the left wheel track from the driveway west and southwest to the center track in the road) west of the driveway to the Onthank farm the car started to leave the roadway going in a southeasterly direction, it traveled 40 feet to the ditch and 95 feet in the ditch until it struck the earthen driveway to the Onthank farm and knocked a chunk of frozen dirt approximately 1½-foot cube out of the driveway. There were six inches of frost in the ground. The ditch was four feet deep at the driveway, it was that depth for 40 feet west of the driveway, and was about two feet deep where the car entered the ditch. At the point where the car started to leave the roadway defendant was kissing Dorothy. Donna Collins testified, "At the instant before the car left the road there, Donald Hilligas and Dorothy McDonald were kissing each other." The car did not swerve and defendant did nothing to either change the course of the car, or to slow its speed, or stop it before it struck the driveway. There was no indication the brakes had been applied. And defendant and Dorothy did not change position. In his deposition, defendant Donald stated in answers to questions by plaintiff's counsel that the car left the road gradually and he did nothing when this was happening, that it happened

so quickly he "couldn't think what to do." The speed estimates were from 35 to 45 miles per hour. From the instant the car started to leave the roadway until it struck the driveway something less than three seconds elapsed. A little over two seconds at 45 miles per hour, under three seconds at 35 miles per hour. Prior to the time the car changed course 135 feet west of the driveway there were no complaints made by the guests about defendant's driving, there was no reason to complain.

█ There are two conflicts in the evidence as introduced by plaintiff, one, in defendant's discovery deposition introduced in part by plaintiff and in part by defendants, defendant Donald states he was not kissing Dorothy and she was not kissing him, two, Donna Collins and defendant in his deposition state the car swerved in the gravel on the south side of the roadway, two witnesses who examined the tracks state the car did not swerve as it went into the ditch. Plaintiff is not bound by the testimony of Donna and in defendant's deposition. See State v. Hobbs, 252 Iowa 432, 437 to 439, 107 N.W.2d 238, 241, 242. We consider only the evidence favorable to plaintiff, whether or not it was contradicted. Lewis v. Baker, 251 Iowa 1173, 1177, 104 N.W.2d 575, 577. Plaintiff was seriously injured when the car struck the driveway. He suffered a loss of memory from such injuries and was unable to recall or testify to the events leading to the collision.

█ I. Reckless operation of a motor vehicle as used in section 321.494, Code of Iowa, 1958, through the years has been defined by us as meaning more than negligence, more than want of ordinary care. It means, proceeding with no care coupled with disregard for consequences, the acts must manifest a heedless disregard for or indifference to the rights of others in the face of apparent danger or danger so obvious the operator should be cognizant of it, when the consequences of such actions are such an injury is a probability rather than a possibility. Recklessness may include willfulness or wantonness, but if the conduct is more than negligent it may be reckless without being willful and wanton. Siesseger v. Puth, 213 Iowa 164, 182, 239 N.W. 46, 54; Fritz v. Wohler, 247 Iowa 1039, 1041, 78 N.W.2d 27, 28; Schmitt v. Cutkomp, 248 Iowa 575, 578, 81 N.W.2d 662, 664; Lewis v. Baker, 251 Iowa 1173, 1177, 104 N.W.2d

575, 577; Beletti v. Schuster, 253 Iowa 1166, 115 N.W.2d 858; and citations in each of these authorities. In Fritz v. Wohler and Schmitt v. Cutkomp, both supra, we point out the elements of recklessness as follows: (1) No care coupled with disregard for consequences. (2) There must be evidence of defendant's knowledge, actual or chargeable, of danger and proceeding without any heed of or concern for consequences. And (3) The consequences of the actions of the driver are such that the occurrence of injury is a probability rather than a possibility.

Plaintiff argues he has established all three, defendant that none is established.

II. This is our first kissing case. There are two such cases from other jurisdictions. Davis v. Klaiber, 229 F.2d 883 (6th Cir. 1956), was decided under the Ohio guest statute providing a guest may only recover for damages caused by the willful and wanton misconduct of the operator. There the driver attempted to put his arm around and kiss his plaintiff-guest. She was only able to exclaim, "Watch what you're doing" when the accident happened. The driver was driving between 50 and 55 miles per hour where the maximum speed limit was 40 miles per hour approaching a 45-degree turn, a flashing signal was in operation at the turn. The car went off the road and crashed into a telephone pole. There was no occasion to complain of the defendant's conduct or driving prior to the incident leading to the accident. The court held the conduct of the driver was not willful or wanton within the meaning of the Ohio guest statute.

In Schlesinger v. Miller, 97 Colo. 583, 585, 52 P.2d 402, 403, decided under the Colorado guest statute requiring " 'negligence consisting of a willful and wanton disregard of the rights of others' " in a guest case, the court sustained a judgment for plaintiff where defendant was driving 40 to 45 miles per hour on one of the principal streets of Denver between 11 and 11:30 p.m., with one arm around his girl friend, and was in the act of kissing her just a split second before the crash; he had been warned by his passengers and had paid no heed.

There is a third case, Schepp v. Trotter, 115 Conn. 183, 185, 160 A. 869, 870, where the driver, though not kissing his companion, kept turning his face toward her in conversation. He was driving on wet pavement at 11:30 p.m. on a city street

with only his parking lights on, his windshield wipers were going, his guests protested twice, once when he barely missed another car. He failed to see the headlights of an approaching car until it was too close and a collision followed. The court held the driver's conduct was in heedless and reckless disregard for the plaintiff's safety. The court said, "It is to be noted that the accident was not caused by any single act of carelessness or negligence, but rather through a deliberate course of conduct."

These cases were decided under statutes not identical with ours, though they do require more than the want of ordinary care to maintain a guest case. These cases do point up the fact that in deciding this question one court held the attempt to kiss his companion was not willful and wanton and commented there was no occasion to complain prior to the one incident, two courts held the conduct was more than negligence, willful and wanton in one case, and in heedless and reckless disregard in the other, where the evidence shows a prior course of conduct calling forth a justified complaint.

III. Our most recent guest case, Beletti v. Schuster, 253 Iowa 1166, 115 N.W.2d 858, closely resembles the present one on the facts. In Beletti the driver and passengers were teen-agers, there had at least been an invitation to race with another car, the passing of each car by the other. After the other car had turned around and was going in the opposite direction, the defendant driver looked around to see what had happened to it. In that instant one of the right tires dropped off of the blacktop and defendant's effort to bring it back resulted in a slide or skid northeasterly across the blacktop into the north ditch. The look to the rear was momentary. The moment the wheel dropped off the blacktop control of the car was lost. The defendant was driving 50 to 55 miles per hour, the blacktop was 21 feet 10 inches wide, and the dropoff from the blacktop to the shoulder three to five inches. The only cause of the accident shown in the evidence was the look to the rear. There were no complaints of the driving prior to the look to the rear and no other evidence of inattention to his driving. We there held the evidence was insufficient to generate a jury question on recklessness. In the course of the opinion we said such an act alone, although intentional,

does not give rise to an inference of recklessness; much more than a mere showing of momentary inattentiveness is required to establish recklessness; and we found in that record nothing to indicate a no-care attitude, a disregard for consequences, or a heedless disregard of danger.

■ Unless there are differences in evidence in the instant case and the Beletti case which allow different inferences, we are bound ·by the Beletti holding. There are no substantial differences in the inferences permissible from the evidence. In Beletti defendant looked to the rear and immediately was off the blacktop and was unable to control his car, the seconds between the look and the collision do not appear from the opinion; in this case defendant kissed his girl, "At the instant before the car left the road * * * [they] were kissing each other", within less than three seconds the collision occurred.

■ Reckless conduct, like negligent conduct, starts at some point of time. What we are concerned with is evidence from which the inference of reckless conduct may properly be drawn. With few exceptions we have required evidence of a persistent course of conduct to show no care coupled with disregard of consequences, the primary element of recklessness. This is true because if it were not so required we would be allowing an inference of recklessness from every negligent act. We cannot say the result was so obvious the conduct of defendant amounted to no care or that injury was the probable result. It is common knowledge that young drivers kiss their girl friends while driving, and have since the advent of the automobile. This is perhaps negligent conduct so far as the operation of the vehicle is concerned, but from the record presented we hold there is not a permissible inference of reckless operation. As supporting this view, see Neyens v. Gehl, 235 Iowa 115, 15 N.W.2d 888.

IV. Plaintiff relies heavily on Mescher v. Brogan, 223 Iowa 573, 272 N.W. 645; Fraser v. Brannigan, 228 Iowa 572, 293 N.W. 50; and Anderson v. Elliott, 244 Iowa 670, 57 N.W.2d 792. We do not find them to be factually in point. The Mescher and Anderson cases involve missing a turn with more speed than present here. The Fraser case differs in the type of roadway and bridge which, coupled with speed, apparently led to loss of control. A

situation somewhat similar to the Fraser case is found in Mc-Bride v. Dexter, 250 Iowa 7, 92 N.W.2d 443, and we there held the evidence insufficient. The Anderson case as well as Thornbury v. Maley, 242 Iowa 70, 45 N.W.2d 576, and Hart v. Hinkley, 215 Iowa 915, 247 N.W. 258, also relied on by plaintiff, are discussed in McBride.

The judgment is—Affirmed.

All JUSTICES concur.